**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KENNETH W. FORD,

        Plaintiff,

v.                                    Case No. 3:15-cv-907-J-32JRK

CHRISTOPHER HAYES, et al.,

        Defendants.

_____

## ORDER

### I.  Status

Plaintiff, an inmate of the Florida penal system, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983.  He is currently proceeding on a Second Amended Complaint (Doc. 17) (Second Amended Complaint or SAC), in which he names the following Defendants: Officer Christopher Hayes; Officer David Alford; Officer Douglas Pope; Officer William Lynn; and Sergeant James Rogers. Plaintiff raises claims of use of excessive force, state law assault and battery, and failure to intervene.[1]

The parties filed cross-motions for summary judgment. Defendants filed a Motion for Summary Judgment (Doc. 75) (Def. Motion) with attached exhibits (Def. Ex.) on December 19, 2017. Defendants filed additional exhibits (Doc. 76) on December 20, 2017. Plaintiff filed a Response in Opposition (Doc. 82) (Pl. Response) and a Declaration (Doc. 83) (Pl. Decl.) on January 25, 2018. Plaintiff's Motion for Summary Judgment (Doc. 77) (Pl. Motion) with

_____

[1] Plaintiff also alleges that Defendant Pope sexually harassed him. Plaintiff does not specify this as a separate claim in the Second Amended Complaint, <u>see</u> SAC at 10, but in an abundance of caution, the Court addresses it in this Order.

exhibits, filed on December 28, 2017, is supported by a List of Undisputed Facts (Doc. 78) and a Declaration with additional exhibits (Doc. 85).[2] On January 25, 2018, Defendants filed a Response in Opposition (Doc. 81) (Def. Response). The Motions are ripe for review.[3]

## II.  Summary of Parties' Pertinent Filings

### A.  Plaintiff's Second Amended Complaint[4]

Plaintiff raises claims based on three separate incidents. First, according to Plaintiff, on February 10, 2014, Defendants Hayes and Alford used excessive force on him without need or provocation. See SAC at 5. Plaintiff contends that he declared a psychological emergency; Defendants Hayes and Alford removed him from his cell and restrained him; and when they were outside of the wing, these two Defendants "slammed Plaintiff face first onto the concrete floor" for no reason. Id. He asserts that these Defendants then "pounced on top of the Plaintiff and began repeatedly striking the Plaintiff in the head, face, and mouth with clenched fist[s]." Id. at 6. He alleges that he was then escorted to the triage area and examined by medical personnel.

Second, on February 17, 2014, Plaintiff declared another psychological emergency. Defendant Pope escorted Plaintiff to the shower where a strip search was conducted. Plaintiff contends that Defendant Pope "repeatedly ordered Plaintiff to grab both buttocks

_____

[2] The same Declaration was filed on December 28, 2017, excluding exhibits (Doc. 79).

[3] Citations for each document are to the page numbers as assigned by the Court's electronic case filing system.

[4] The Court credits the "specific facts" pled in Plaintiff's sworn Second Amended Complaint when considering the summary judgment motions. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014) (quotations and citations omitted).

and spread them." Id. at 7. Plaintiff was removed from the shower and escorted to a self-harm observations status cell. He was subsequently returned to the shower where he "refused" Defendant Pope's "order to be again sexually harassed and embarrassed to spread his buttocks." Id. When Plaintiff was later being placed in his cell, "[D]efendant Pope attached a hand restraint cable to Plaintiff's handcuffs and began tugging and pulling forcefully with the restraint cable causing the handcuffs to dig, cut, and lacerate Plaintiff's wrist while repeatedly shouting, 'stop resisting.'" Id. at 8. Defendant Pope then "reached inside his pocket to . . . retrieve a key like object . . . and sliced Plaintiff's left hand leaving 3 permanent scars." Id.

The third incident occurred on February 19, 2014. Prior to that date, on February 14, 2014, Plaintiff alleges that Defendant Pope threatened to abuse him for filing grievances when Defendant Pope returned to work on February 19, 2014. Id. at 7. Then, on February 16, 2014, Defendants Hayes and Alford also threatened him. Id. So, when Defendant Lynn approached Plaintiff's cell to escort him to a call out on February 19, 2014, Plaintiff initially refused "due to fear of being physically beaten by [D]efendants Pope, Hayes, and Alford because it was the exact dated asserted by them." Id. at 8. After Defendant Lynn told Plaintiff that he could not refuse and that Defendant Pope was off duty, Plaintiff "reluctantly complied with the order and submitted [to] hand restraints." Id. A spit shield was placed over Plaintiff's face. Id. After Plaintiff's call out, "[D]efendant Pope began taunting the Plaintiff." Id. "Out of fear and noticing a camera on the walkway, the Plaintiff dropped to the ground" and began "screaming for help; that [D]efendant Pope was going to assault him off camera." Id. A sergeant ordered Plaintiff to get up, but instead, Plaintiff "curled up on the ground expressing

his fear of being violently beaten by [D]efendant Pope off camera." Id. "[D]efendants Pope and Lynn grabbed and lifted the Plaintiff off the ground and began forcefully shoving his arms upward towards his neck area while twisting them against the restraints with great force from behind his back without need or provocation, while shoving him forward with force so extreme that it knocked Plaintiff out of his shower slides." Id. at 9. Defendants Lynn and Pope subsequently lifted Plaintiff "off the ground and began to carry/drag him by the restraints while moving at a fast strut-like pace and causing further pain." Id. Once in an area without cameras, Defendants Pope and Lynn "slammed [Plaintiff] face first onto the concrete floor causing him to flip over and land on his back." Id. These Defendants "then pounced on top of the Plaintiff and, with clenched fist, repeatedly punched him in the face and head until the spit shield was saturated with Plaintiff's blood." Id. "Defendants Rogers and Hayes observed the whole occurrence and their failure, inaction and omissions to intervene caused" Plaintiff injury. Id.

## B. Defendants' Motion and Plaintiff's Response

Defendants move for summary judgment in their favor for the following reasons: (1) Plaintiff fails to establish Eighth Amendment violations; (2) Plaintiff's injuries were de minimis and thus his request for monetary relief should be limited to nominal damages, if any; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's state law claims of assault and battery are barred; and (5) Plaintiff did not exhaust his administrative remedies for the February 17, 2014 allegations. See Def. Motion.

Defendants Alford, Rogers, Pope, and Lynn submitted Declarations in support of their positions.[5] In pertinent part, Defendant Alford's Declaration states:

> Ford's allegations against me are absolutely untrue. I did not slam him unprovoked face first onto the concrete floor or jump on top of him and start striking him with closed fists.
>
> . . . .
>
> Ford declared a psychological emergency while housed in cell E3216. At approximately 8:53am, I assisted Officer Christopher Hayes with the escort of Ford to the holding cell. When Ford entered the vestibule in front of Quad #3, he became physically combative in an attempt to break the custodial grip of myself and Officer Hayes.
>
> When instructed to cease, Ford continued his combative behavior. Officer Hayes and I proceeded to use physical force to redirect Ford to the officer station wall in an attempt to bring him into compliance. Ford continued his combative actions so Officer Hayes and myself placed Ford onto the floor chest down utilizing our body weight to pin him to the ground. At this time, Ford ceased his combative actions and all force ceased.
>
> I used the minimum force necessary by using trained tactics when encountering an inmate who is resisting lawful orders by redirecting him to the officer station wall, and then when he became further combative and the attempt to gain his compliance by redirecting him onto the wall failed, re-directing his chest to the ground.

Def. Ex. D (paragraph enumeration and internal citations omitted). Attached to Defendant Alford's Declaration is an Incident Report he completed on February 10, 2014, the date of the incident. It bears the same account.

Defendant Pope's Declaration states as follows:

---

[5] Defendant Hayes did not submit a Declaration.

5

Ford's allegations against me are absolutely untrue. I did not sexually harass Ford and I did not cut his wrists with his handcuffs or his hand with a key like object. I did not lift him by the restraints, did not twist his arms, did not carry him by his restraints, did not lift him by the ankles and slam him on his face, and did not jump on Ford and strike him repeatedly in the head.

. . . .

The February 17, 2014 incidents, as described by Ford, never occurred.

Ford was returned to his cell from a medical call out. At approximately 10:03am, I assisted Officer William Lynn with the escort of Ford back to his cell, E3-104. When Ford entered the vestibule in front of Quad #4, he became physically combative in an attempt to break the custodial grip of myself and Officer Lynn.

When instructed to cease, Ford continued his combative behavior. Officer Lynn and I proceeded to use physical force to redirect Ford to the officer station wall in an attempt to bring him into compliance. Ford continued his combative actions so Officer Lynn and myself placed Ford onto the floor chest down utilizing our body weight to pin him to the ground. At this time, Ford ceased his combative actions and all force ceased. Officer Lynn and I were relieved by Officer Christopher Hayes and Sergeant James Rogers.

I used the minimum force necessary by using trained tactics when encountering an inmate who is resisting lawful orders by redirecting him to the officer station wall, and then when he became further combative and the attempt to gain his compliance by redirecting him onto the wall failed, re-directing his chest to the ground.

Def. Ex. F (paragraph enumeration and internal citations omitted). Defendant Pope's

incident report dated February 19, 2014, is attached to his Declaration. It contains the same

account of the February 19, 2014 incident.[6]

Defendant Lynn avers as follows in his Declaration:

> Ford's allegations against me are absolutely untrue. I did not lift him by the restraints, did not twist his arms, did not carry him by his restraints, did not lift him by the ankles and slam him on his face, and did not jump on Ford and strike him repeatedly in the head.
>
> . . . .
>
> Ford was returning to his cell from a medical call out. At approximately 10:03am, I assisted Officer Douglas Pope with the escort of Ford back to his cell, E3-104. When Ford entered the vestibule in front of Quad #4, he became physically combative in an attempt to break the custodial grip of myself and Officer Pope.
>
> When instructed to cease, Ford continued his combative behavior. Officer Pope and I proceeded to use physical force to redirect Ford to the officer station wall in an attempt to bring him into compliance. Ford continued his combative actions so Officer Pope and myself placed Ford onto the floor chest down utilizing our body weight to pin him to the ground. At this time, Ford ceased his combative actions and all force ceased. Officer Pope and I were relieved by Officer Christopher Hayes and Sergeant James Rogers.
>
> I used the minimum force necessary by using trained tactics when encountering an inmate who is resisting lawful orders by redirecting him to the officer station wall, and then when he became further combative and the attempt to gain his

---

[6] The Incident Report also reflects that there was a video recording, but "during the downloading of this video recording a malfunction of the video camera program prevented the ability to complete the download for a copy. The hand held camera was turned into the OIT department in efforts to retrieve the video[.]" Def. Ex. F.

> compliance by redirecting him onto the wall failed, re-directing
> his chest to the ground.

Def. Ex. G (paragraph enumeration and internal citations omitted). Defendant Lynn's

February 19, 2014 Incident Report, containing the same account, is attached to his

Declaration.

Defendant Rogers filed the following Declaration in support of the Motion:

> Ford's allegations against me are absolutely untrue. At
> no time did I ever witness a misuse of force against Ford or fail
> to stop the same.
>
> . . . .
>
> On February 19, 2014, I was serving as the Suwannee
> C.I. E-Dormitory Housing Sergeant. At approximately 10:03am,
> while in the vestibule area in front of quad 4, I observed Ford
> attempt to break away from Officer Pope and Officer Lynn. I did
> not witness either Officer use excessive force in their actions
> to regain Ford's compliance.

Def. Ex. E (paragraph enumeration and internal citations omitted). Defendant Rogers

attached to his Declaration an Incident Report that he completed on February 19, 2014. It

contains the same statement.

Defendants also submitted a Declaration of Albert Carl Maier, M.D., Senior Physician

for the FDOC in the Central Office, with exhibits. Doc. 76. Dr. Maier reviewed Plaintiff's

allegations in this case and his medical records. He opined as follows:

> Plaintiff's medical records show that following the Use
> of Force on the morning of February 10, 2014, the only injuries
> Plaintiff suffered were a minimal skin tear to the upper lip;
> minimal abrasions to his lower lip, inner aspect; dried blood at
> the opening of his nose; and an abrasion with slight swelling to
> his left forehead. When Plaintiff was examined again four hours
> later, his medical records only show a laceration on his upper
> lip and a minor scratch on his left shoulder. The only mention

8

of a chipped tooth in Plaintiff's medical record comes from an incident in 2015 when Plaintiff reported he fainted in his cell.

Plaintiff's medical records contain no documented medical evidence of an injury consistent with the type Plaintiff alleged to have occurred to his left hand and wrist on February 17, 2014. His medical records do show that he suffered self-inflicted laceration on his left wrist on February 4, 2014. Plaintiff's hands were specifically examined on February 19, 2014 during the post use of force exam and no obvious deformities were noted. Plaintiff was examined again on February 21, 2014 and the only injury to his left hand and wrist noted were scratches/minor abrasions.

Plaintiff's medical records show that following the February 19, 2014 use of force, he sustained the following injuries: a laceration to the left eyebrow, a small hematoma to the right eyebrow, and swelling around his right eye and lip. The laceration and hematoma were both closed with two stitches, a total of four. Plaintiff's medical records show that radiographs of the Plaintiff's facial bones were done on February 19 and February 26, 2014. Both showed no evidence of fracture. By February 26, there was no more evidence of soft tissue swelling. When Plaintiff was examined on February 21, 2014, medical staff did observe an excoriated area of skin on the back of Plaintiff's ankles consistent with wearing ankle restraints.

Doc. 76-1 at 2 (paragraph enumeration omitted).

Based on some of the discovery filed, it appears that some video evidence exists, but Defendants did not file it for the Court's review. See Doc. 77-3 at 4-5; Doc. 85-4 at 3-5; Doc. 85-5 at 3-4.

Plaintiff responds to each of Defendants' arguments. See generally Pl. Response; see also Pl. Decl. He generally reasserts the allegations in his Second Amended Complaint, and filed several exhibits.

### C. Plaintiff's Motion and Defendants' Response

Plaintiff moves for summary judgment, arguing that there are no genuine issues of material fact as to his use of excessive force claims, failure to intervene claim, and assault and battery claim. See Pl. Motion at 4. He attached several exhibits to his Motion, including affidavits from other inmates who claim to have witnessed the February 19, 2014 use of force (Doc. 77-11 at 2-3). Defendants responded. See generally Def. Response.

### III. Standard of Review

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted).

> If the movant satisfies the burden of production showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). [The Court] draw[s] "all factual inferences in a light most favorable to the non-moving party." Id.

Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and

citation omitted). "'A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

### IV.  Legal Standards on Excessive Force Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII. "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). "If force is used 'maliciously and sadistically for the very purpose of causing harm,' then it necessarily shocks the conscience." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam) (quoting Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987)). Courts consider the following factors when analyzing whether force was used maliciously and sadistically:

> (1) "the extent of injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). "When considering these factors, [courts] 'give a wide range of

deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell, 510 F.3d at 1311).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). "While a lack of serious injury is relevant to the inquiry, '[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts.'" Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (quoting Wilkins v. Gaddy, 559 U.S. 34, 38 (2010)). "A prisoner may avoid summary judgment, 'only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain.'" Stallworth v. Tyson, 578 F. App'x 948, 953 (11th Cir. 2014) (quoting Brown, 813 F.2d at 1188).

## V. Analysis

### A. February 10 and 19, 2014 Excessive Force / Qualified Immunity

While there is no dispute that force was used on both days and that Plaintiff suffered some injuries, the parties' versions of events differ as to the reason for and amount of force used. Defendants argue that force was used in response to Plaintiff being uncooperative, and that they used only the minimal amount of force necessary to gain Plaintiff's compliance. Plaintiff contends that Defendants used force without need or provocation on February 10,

2014, and although he admits that he was initially uncooperative on February 17, 2014, his description of the force used, if believed, could lead to a finding of unconstitutionally excessive force.

Defendants' focus on the injury received compared to the force described is somewhat misplaced. The extent of the injury is one factor to consider. But Defendants cannot defeat an excessive force claim merely by showing a lack of significant injury.[7] <u>See Wilkins</u>, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). On this record, the Court will deny summary judgment as to the February 10 and 19, 2014 excessive force claims, because genuine issues of material fact remain.

Defendants request qualified immunity as to the excessive force claims arising out of the February 10 and 19, 2014 incidents. <u>See</u> Def. Motion at 17-18. However, the Court has found there are material facts in dispute with respect to these claims. If the finder of fact agrees with Plaintiff, then Defendants violated clearly established law by using unconstitutional excessive force. Thus, Defendants' request for qualified immunity is due to be denied.

---

[7] In this case, Plaintiff did suffer physical injuries.

**B. February 17, 2014 Sexual Harassment and Excessive Force[8]**

According to Plaintiff, after he declared a psychological emergency on February 17, 2014, he was escorted to the shower where a strip search was conducted by Defendant Pope. Plaintiff admits that he refused to comply with Defendant Pope's orders because Plaintiff believed he was being sexually harassed, but he eventually complied after a sergeant was present. After the strip search, Plaintiff was placed back in a cell where Defendant Pope attached a hand restraint cable to his handcuffs. Defendant Pope forcefully tugged and pulled on the restraint cable causing the handcuffs to lacerate Plaintiff's wrist and then Defendant Pope sliced Plaintiff's left hand with a key-like object leaving three permanent scars.

Plaintiff does not appear to be raising any form of sexual harassment or assault claim. But, in an abundance of caution, to the extent Plaintiff is raising such a claim, the Court finds it to be frivolous under 28 U.S.C. § 1915(e)(2)(B). During Plaintiff's deposition, he explained how Defendant Pope "sexually harassed" him.

Q     How was he sexually harassing you?

A     Because he keep telling me to bend over and cough and
I think that - -

Q     Did he say anything sexual to you?

A     No, he did not.

_____

[8] Defendants argue that Plaintiff failed to exhaust his administrative remedies for the February 17, 2014 allegations. See Def. Motion at 19-22. Because Defendants failed to raise this exhaustion defense in their first motion to dismiss, see Motion to Dismiss by Defendants Hayes, Pope, and Rogers (Doc. 38), they forfeited the right to raise the defense in a subsequent motion. See Brooks v. Warden, 706 F. App'x 965, 969 (11th Cir. 2017) ("[T]he exhaustion defense is subject to forfeiture under Rule 12(g)(2)." (citation omitted)).

Q      Did he ask you to do anything sexual to him?

A      No, he did not.

Q      Did he make any comment about your body?

A      No, he did not.

Q      Okay. Where is the sex in it?

A      Well - - well, I'm a attractive dude and I work out and I know I got a banging body and I just think he getting off on me by looking at me. I really think that he getting off by looking at me.

Q      Pope?

A      Yes. I think Pope is a sadist and I think he actually getting off by looking at me and I think he's trying to get a bigger memory of my nakedness so he can masturbate or do whatever freaky things that he wants to.

Q      Why would you think that?

A      Because he's a sadist. He get a kick out of . . . Well, he get a kick out of causing people pain, you know, he get a kick out of being cruel to people and he get a kick out of making people submissive and I'm not that type.

Q      So embarrassing and humiliating is different than sexual harassment. Would you agree?

A      I think it's in the same - - in the same category, embarrassing, sexual harassing. . . .  I'm a male and he's a male, so he's trying to degrade me sexually. He's trying to make me spread and cough and spread my butt cheeks like a woman, you know, and he's trying to make me do this over and over again so he can just be aroused by me[.]

Def. Ex. A at 13-15.

Defendant Pope did not say or do anything that would give rise to a sexual harassment claim. Plaintiff's thoughts and perceptions as to the challenged conduct are

insufficient. Any such claim Plaintiff is attempting to raise is frivolous and due to be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Regarding Plaintiff's allegations of excessive force, Defendant Pope denies the allegations, averring that the February 17, 2014 incidents as described by Plaintiff never occurred. See Def. Ex. F. Approximately two weeks before this alleged use of force, Plaintiff had a self-inflicted, superficial laceration on his left wrist. Doc. 76-1 at 3-7. On February 19, 2014, two days after this alleged use of force and after a separate use of force, Plaintiff complained to Nurse Kemp of pain in his hands, but Nurse Kemp indicated that there was "no obvious deformity." Id. at 21; see also id. at 22. That same day, Plaintiff was also seen by the physician who stitched Plaintiff's lacerations and a physician in the eye clinic–neither of these medical providers noted any injury to Plaintiff's hand or wrist. See id. at 25, 29-31. However, after Plaintiff was transferred to a different institution on February 21, 2014, the medical records reflect that he had scrapes with scabs on his left hand and wrist. See id. at 34; see also id. at 39 (noting scratches/minor abrasions on left hand, left wrist, and back of ankles).

Plaintiff avers that Defendant Pope used excessive force without justification. The medical records cast some doubt on the veracity of Plaintiff's story. However, Plaintiff's testimony countered by Defendant Pope's testimony presents a swearing-match between two interested parties that cannot be resolved by the Court on summary judgment. Thus, Defendant Pope's request for summary judgment on the February 17, 2014 excessive force claim will be denied.

16

### C. February 19, 2014 Failure to Intervene

Plaintiff claims that Defendants Rogers and Hayes failed to intervene in the February 19, 2014 assault by Defendants Pope and Lynn. Upon review of the record, the Court finds that no party is entitled to summary judgment on this claim. The facts are in dispute as to whether excessive force was used and if so, whether Defendants Rogers and Hayes witnessed such force and failed to intervene.

### D. De Minimis Injuries

Defendants argue that Plaintiff did not suffer more than a de minimis injury and thus his monetary relief, if any, should be limited to nominal damages. See Def. Motion at 11-17. "The [Prison Litigation Reform Act (PLRA)] places substantial restrictions on the judicial relief that prisoners can seek, with the goal of 'reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints.'" Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015) (quoting Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011)). Section 1997e(e) of the PLRA provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002). The statute does not define "physical injury," but the Eleventh Circuit has clarified that, "in order to satisfy section 1997e(e), the physical injury must be more than de minimis, but need not be significant." Harris v. Garner, 190 F.3d

1279, 1286 (11th Cir.1999), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir.1999), opinion reinstated in relevant part, 216 F.3d 970, 972 (11th Cir. 2000). While compensatory and punitive damages are precluded in the absence of a more than de minimis physical injury, "nominal damages may still be recoverable." Al-Amin, 637 F.3d at 1198.

As a result of the February 10, 2014 use of force, Plaintiff contends that his "front tooth was chipped, upper lip split open and swollen that caused bleeding laceration and permanent scarring, left and right eye swollen, nose bleeding, and several knots on the head." SAC at 6. He further alleges that he had "headaches for months, light flashes, dizziness, syncope episodes and had to be treated for approx. 2½ years for mental distress including being diagnosed with Post Traumatic Stress Disorder and was prescribed psyche medication and pain medication." Id. The contemporaneous medical records show that Plaintiff suffered "minimal skin tear/lac[eration] to upper inner aspect of lip, Abrasions, minimal to lower lip inner aspect, Dried blood [at] opening of nares - [no] difficulty breathing[,] Abrasion to [left] forehead with slight swelling, not open." Doc. 76-1 at 8 (internal numbering omitted); see id. at 9.[9] In a grievance dated March 3, 2014, Plaintiff alleged that he had been beaten on February 10, 2014 by Defendants Hayes and Alford, and although his "injuries were reported to the nurse," the injuries were "documented on paper to be less severe than they actually were." Doc. 77-14 at 4. At his deposition, Plaintiff testified that he told the nurse who examined him after the use of force about his chipped tooth, but she

---

[9] Later that same day, after another use of force that is not part of this case, Plaintiff's medical records show that he had a laceration to his outer upper lip and a minor scratch on his left shoulder. Doc. 76-1 at 17-18.

failed to document it because an officer who was in the room intimidated her. Def. Ex. A at 11.

On March 26, 2014, Plaintiff submitted an inmate request to the dental department. He requested an appointment because his tooth "was chipped in a staff abuse at Suwannee C.I." Doc. 77-6 at 2. Over a year later, on September 14, 2015, Plaintiff submitted a dental sick-call request, stating: "Today I had a syncope episode that caused me to faint. When I hit the ground my tooth was cracked from the fall along with other injuries. It is loose and painful. I need to be seen by a dentist to see what can be done about it. Also pain medication ordered." Doc. 77-6 at 10. He further indicated that the problem/symptoms started that day (September 14, 2015) after he fainted. Id. A few days later, on September 18, 2015, Plaintiff submitted another dental sick-call request. He repeated his complaints of a cracked tooth caused by a syncope episode on September 14, 2015. Id. at 11.

According to Plaintiff, on February 17, 2014, Defendant Pope's actions caused "the handcuffs to dig, cut, and lacerate Plaintiff's wrist." SAC at 8. Defendant Pope also "sliced Plaintiff's left hand leaving 3 permanent scars." Id.

As a result of the February 19, 2014 incident, Plaintiff contends that he had cuts on his wrists and ankles, numbness in his right thumb area, chronic back and neck pain from his arms being twisted, a laceration on his right eyebrow which needed sutures, two black eyes that were swollen, a bloody nose, busted lip, and "other numerous contusions." SAC at 9. "He also experienced dizziness, blurred vision, light flashes, and syncope episodes; including being diagnosed with P.T.S.D. and treated for appox 2½ yrs. for mental distress." Id.

The medical record created shortly after the February 19, 2014 use of force shows that Plaintiff had a laceration and a small hematoma to his left eyebrow, and that Plaintiff complained of pain in his hands but there was "no obvious deformity noted." Doc. 76-1 at 21. During that same examination but on a separate form, the medical provider wrote: "Laceration to [left] eyebrow, small hematoma to [right] eyebrow. [Inmate] complaining of pain in bilateral hands." Id. at 22. Plaintiff was subsequently seen by a physician who indicated that Plaintiff had lacerations to the right eyebrow and eyelid, which the physician closed with two sutures each. Id. at 25. The physician also ordered x-rays of Plaintiff's facial bones, id., both of which showed no evidence of fracture, id. at 27 (February 19, 2014 x-ray), 36 (February 26, 2014 x-ray).

Plaintiff suffered actual documented physical injuries for which he received medical treatment, and he avers that he suffered additional undocumented injuries. Considering the record and the facts in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist regarding the extent of Plaintiff's injuries. The Court, therefore, declines to decide at this time that his injuries were de minimis. Defendants' Motion in this regard is denied.

**E. State Law Assault and Battery Claims**

Defendants argue that "Plaintiff cannot sue Defendants or name them as a party in a state tort action; Plaintiff must sue the entity by which they were employed, and he cannot sue the entity in federal court." Def. Motion at 18. Defendants quote Florida Statute § 768.28(9)(a) as follows:

> . . . (n)o officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as

> a party defendant in any action for injury or damage suffered as a result of any act, event or omission of action in the scope of her or his employment or function. . . . The exclusive remedy for injury or damage suffered as a result of an act, event or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity . . . of which the officer, employee or agent is an employee.

Def. Motion at 18.

At first blush, Defendants' argument appears persuasive. However, reviewing the entire statute reveals that Defendants left out a material phrase of the statute's language. The second ellipses in the quote taken from Defendants' Motion was put in place of the following phrase: "<u>unless</u> such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (emphasis added). This is exactly what Plaintiff alleges. Removing this phrase from the quoted language appears disingenuous. Defendants' Motion is due to be denied as to the state law claims.

## VI. Conclusion

Upon review of the record, the Court finds that none of the parties are entitled to summary judgment as to the excessive force, assault and battery, and failure to intervene claims. However, insofar as Plaintiff is raising a sexual harassment claim against Defendant Pope, the Court will dismiss the claim as frivolous. Accordingly, it is

**ORDERED:**

1.      The parties' Motions for Summary Judgment (Docs. 75, 77) are **DENIED**.

2.     Insofar as Plaintiff is raising a sexual harassment claim against Defendant Pope, the claim is **DISMISSED as frivolous** under 28 U.S.C. § 1915(e)(2)(B).

3.     The Court refers this case to the Honorable James R. Klindt, United States Magistrate Judge, to conduct a settlement conference.

4.     Pending the outcome of the settlement conference, the Clerk shall administratively close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of August, 2018.

_____
TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/9
c:

Honorable James R. Klindt
United States Magistrate Judge

Kenneth E. Ford, #167315
Counsel of Record